**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CIVIL CASE NO. 1:23-CV-22060-FAM**

**BTC MEDIA, LLC,**

      **Plaintiff**

**v.**

**THE TRADE GROUP, INC.,**

      **Defendant.**

_____/

<u>**DEFENDANT THE TRADE GROUP, INC.'S MOTION TO DISMISS, STAY, OR**</u>
<u>**TRANSFER AND MEMORANDUM OF LAW IN SUPPORT**</u>

## TABLE OF CONTENTS

I. MEMORANDUM OF LAW ................................................................................................1

II. FACTUAL BACKGROUND .........................................................................................1

    A.    Trade Group Enlisted BTC's Services for the Bitcoin 2022 Conference ...............1

    B.    The Agreement..........................................................................................................2

    C.    BTC Failed to Pay for Trade Group's Services and Goods ....................................3

    D.    The Texas Action ......................................................................................................3

III. ARGUMENT AND AUTHORITIES ............................................................................4

    A.    The Court should dismiss, stay or transfer the Florida Action per the first-filed rule. ................................................................................................................4

        1.    The Texas Action was filed first. ................................................................5

        2.    The Florida Action involves the same parties. .............................................6

        3.    The Florida Action has overwhelmingly similar issues as Trade Group's first-filed Texas Action. ................................................................6

        4.    No compelling circumstances rebut the preference of the Texas Action.........................................................................................................7

    B.    *Forum non conveniens* provides that the Florida Action should be transferred to Texas.................................................................................................8

    C.    The Court should dismiss the Florida Action for lack of personal jurisdiction. ..............................................................................................................9

    D.    The Court should dismiss the Florida Action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. ...................11

        1.    BTC's breach of contract claim does not specify a contract or provision ...................................................................................................12

        2.    Fraudulent inducement is not alleged with particularity............................14

        3.    The Fraudulent Inducement Claim is barred by the economic loss rule. ...........................................................................................................16

        4.    BTC's claim for Accounting fails on its face. ...........................................16

        5.    The declaratory judgment claim fails as a matter of law. ..........................18

    IV. CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................................11, 12

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402, 414 (2017)...............................................................................10, 11

*Bristol-Meyers Squibb Co. v. Superior Court of Cal.*,
582 U.S. 255 (2017)....................................................................................9, 10, 11

*Cavalieri v. Avior Airlines C.A.*,
No. 17-CV-22010, 2018 WL 4194080 (S.D. Fla. Aug. 10, 2018) .............12, 13, 14

*Heritage Schooner Cruises, Inc. v. Acadia Ins. Co.*,
No. 09-CIV-22579, 2009 WL 10699880 (S.D. Fla. Nov. 30, 2009) ........................6

*Kelly v. Gerber Prods. Co.*,
No. 21-60602-CIV, 2021 WL 2410158 (S.D. Fla. June 11, 2021)...........................7

*Liberty Surplus Ins. Corp. v. Kaufman Lynn Constr., Inc.*,
No. 22-80203, 2022 WL 18910347 (S.D. Fla. Oct. 26, 2022) .........................18, 19

*Managed Care Sols., Inc. v. Essent Healthcare, Inc.*,
694 F. Supp. 2d 1275 (S.D. Fla. 2010) ..............................................................17, 18

*Marlite, Inc. v. Eckenrod*,
No. 10-23641-CIV, 2012 WL 3614212 (S.D. Fla. Aug. 21, 2012) ........................16

*Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co.*,
No. 11-21163-CIV, 2012 WL 1416428 (S.D. Fla. Apr. 24, 2012).........................19

*MSP Recovery Claims Series 44, LLC v. Pfizer, Inc.*,
No. 21-23676-CIV, 2022 WL 17484308 (S.D. Fla. Nov. 10, 2022) .......... 4, 5, 7, 8, 9

*Nebula Glass Intern., Inc. v. Budnick Converting, Inc.*,
No. 09-61256-CIV, 2010 WL 473330 (S.D. Fla. Feb. 5, 2010) ..............................6

*Orbsat Corp. v. Seifert*,
No. 1:21-CV-22436, 2021 WL 5771150 (S.D. Fla. Dec. 6, 2021)......................5, 6

*Pediatrix Med. Grp. v. Aetna Inc.*,
　No. 18-60908-CIV, 2018 WL 4997092 (S.D. Fla. Aug. 27, 2018) ........................................20

*Pierce v. State Farm Mut. Auto. Ins. Co.*,
　No. 14-22691-CIV, 2014 WL 7671718 (S.D. Fla. Dec. 17, 2014)........................................12

*Piper Aircraft Co. v. Reyno*,
　454 U.S. 235 (1981)..............................................................................................................8

*Sierra Equity Grp. v. White Oak Equity Partners*,
　650 F. Supp. 2d 1213 (S.D. Fla. 2009) .................................................................................20

*Silver Crown Invts. v. Team Real Estate Mgmt.*,
　349 F. Supp. 3d 1316 (S.D. Fla. 2018) .................................................................................15

*Sivertson v. Citibank*,
　390 F. Supp. 3d 769 (E.D. Tex. 2019)...........................................................................12, 13

*Stewart v. JP Morgan Chase Bank Nat. Ass'n*,
　No. 3:12-CV-1361-M-BK, 2012 WL 4932169 (N.D. Tex. Oct. 1, 2012)..............................12

*Summers-Wood L.P. v. Wolf*,
　No. 3:08-CV-60/RV/MD, 2008 WL 2229529 (N.D. Fla. May 23, 2008) ..............................11

*Technolojoy, LLC v. BHPH Consulting Servs., LLC*,
　No. 19-23770-CIV, 2021 WL 8566755 (S.D. Fla. May 14, 2021)...........................16, 17, 18

*Topp, Inc. v. Uniden Am. Corp.*,
　513 F. Supp. 2d 1345 (S.D. Fla. 2007) .................................................................................16

*Trilogy Props. LLC v. SB Hotel Assocs.*,
　No. 09-21406-CIV, 2010 WL 7411912 (S.D. Fla. Dec. 23, 2010)........................................19

*Vega v. T-Mobile USA, Inc.*,
　564 F.3d 1256 (11th Cir. 2009) ............................................................................................14

*Ven-Fuel, Inc. v. Dep't of the Treasury*,
　673 F.2d 1194 (11th Cir. 1982) ............................................................................................18

*Wilchombe v. TeeVee Toons, Inc.*,
　555 F. 3d 949 (11th Cir. 2009) .............................................................................................12

*Zarrella v. Pac. Life Ins., Co*,
　755 F.Supp.2d 1218 (S.D. Fla. 2010) ...................................................................................15

**Statutes**

15 U.S.C. § 22............................................................................................................................10

28 U.S.C. § 1404 ...................................................................................................1, 4, 5, 8

28 U.S.C. § 2201 ............................................................................................................18

**Other Authorities**

Federal Rule of Civil Procedure 9(b) ...............................................................................14

Federal Rule of Civil Procedure 12(b)(2) ...................................................................1, 11

Federal Rule of Civil Procedure 12(b)(6) ...........................................................1, 11, 14, 15, 18

Southern District of Florida Local Rule 3.8 .......................................................................4

# I.   MEMORANDUM OF LAW

Defendant The Trade Group, Inc. ("Trade Group") hereby moves under 28 U.S.C. § 1404 to stay or transfer the action to the United States District Court for the Northern District of Texas, where Trade Group first initiated its related claims against Plaintiff BTC Media, LLC ("BTC"), because: (i) Trade Group first filed its claims in Texas state court on May 10, 2023; (ii) this action involves the same parties as the Texas Action; (iii) this action involves similar issues as the Texas Action; (iv) there are no compelling circumstances to rebut the preference of the Texas Action; and (v) *forum non conveniens* provides that the Florida Action should be transferred to Texas.

In the alternative, Trade Group moves under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss claims because: (i) this Court lacks personal jurisdiction over the case because Trade Group is both incorporated and headquartered in Texas and the actions implicated in this case all occurred in Texas; (ii) BTC's breach of contract claim does not specify what contract or provision was breached; (iii) the fraudulent inducement claim is not alleged with specificity and barred by the economic loss rule; (iv) the accounting claim is a simple recitation of the elements; and (v) the declaratory judgment claim mirrors the claims in the Texas Action, is a recitation of the breach of contract claim, and asks the court to make factual determinations of past conduct.

# II.   FACTUAL BACKGROUND

Trade Group is a Texas based full-service event marketing and creative design firm well known for its award-winning designs and client-centered service mentality. BTC is a Bitcoin and blockchain media company that gathers and distributes information, education, and research relating to bitcoin and other blockchain currencies.

## A.   Trade Group Enlisted BTC's Services for the Bitcoin 2022 Conference

BTC sponsors a yearly conference called "Bitcoin." Trade Group assisted BTC in hosting

a successful Bitcoin 2021 conference, and because of its success, BTC enlisted Trade Group's services again in connection with Bitcoin 2022. Trade Group agreed to provide turnkey management, planning, and production services for Bitcoin 2022 and began invoicing BTC for those services as early as August 26, 2021. BTC agreed to timely pay those invoices. The invoices were sent to BTC from Trade Group in Texas, and payments would be made to a bank account in Arlington, Texas.

Additionally, from July 2021 to April 2022, Trade Group provided strategy and project management services from its corporate headquarters in Grapevine, Texas. Between October 1, 2021 and April 1, 2022, BTC paid each of those Bitcoin 2022 invoices timely and in full. The payments were mostly made by wire to Trade Group's Texas account.

**B.**     **The Agreement**

In early April 2022, Trade Group emailed BTC a digital copy of a deposit invoice agreement (the "Agreement") pursuant to which Trade Group agreed to provide all remaining services in connection with Bitcoin 2022. On or about April 3, 2022, Justin Doochin of BTC signed the Agreement on BTC's behalf, acknowledging that he had read, understood, and agreed to the terms of the Agreement, including BTC's obligation to pay Trade Group's expenses for the enforcement of Trade Group's rights—including attorneys' fees and interest—until the date final payment is made. A true and correct copy of the Agreement is attached hereto as Exhibit A. The Agreement provided that BTC would pay the remaining deposit and that the final bill would include all add-ons, changes, and any on-site requests made during the show.

Pursuant to the Agreement and the parties' previous course of dealing, Trade Group provided BTC with all necessary and requested services during Bitcoin 2022. Over the course of the entire project and throughout the four-day event, Trade Group updated a Google Sheet in real-

time with all costs associated with changes and additions, including services requested or otherwise required on-site. BTC had full viewing privileges for this document and was constantly aware of all charges. BTC accepted all of the services and goods invoiced by Trade Group.

**C.**     **BTC Failed to Pay for Trade Group's Services and Goods**

The total amount billed by Trade Group to BTC for the goods and services was $16,271,564.89, prior to sales tax. BTC paid a portion of this amount to Trade Group through several payments to Trade Group's bank account in Texas prior to April 2022, but has since failed to pay the $4,774,787.86 balance. In accordance with the Agreement and the course of dealing between the parties, Trade Group sent BTC a final invoice for Bitcoin 2022. BTC failed to make the required payment in accordance with the invoice.

Trade Group made several attempts to collect the outstanding amount over the past year, but BTC has refused to pay the amount due and owing. Since April 2022, Trade Group has continued to accrue interest on the outstanding balance under the Agreement and has incurred additional costs related to its services provided to BTC and efforts to recover the same, bringing the amount owing by BTC to Trade Group to over $5 million.

**D.**     **The Texas Action**

Due to BTC's non-payment, Trade Group was forced to file suit against BTC in Texas state court on May 10, 2023 (the "Original Petition").[1] Trade Group's claims in the Original Petition include breach of Agreement by BTC, or alternatively, quantum meruit and unjust enrichment for its services provided but not paid for, as well as similar claims for costs incurred post-Bitcoin 2022 (e.g., cost for storage of Bitcoin 2022 assets at a warehouse in Texas). *See id.*

Rather than respond to the Original Petition, or even seek to remove the Texas matter, BTC

---

[1] *See* Exhibit B. Trade Group served the Original Petition and citation to BTC on May 12, 2023.

instead chose to first drive up costs to all the parties by filing its Complaint in this Court on June 2, 2023 (hereinafter, the "Florida Action"). BTC's claims in the Florida Action focus on the same issues as Trade Group's Original Petition: the terms of agreement between Trade Group and BTC and the amounts charged to BTC by the invoices.[2] Meanwhile, BTC surreptitiously removed Trade Group's Original Petition to the Northern District of Texas on June 5, 2023. Trade Group filed an amended complaint in the Texas federal court on June 20, 2023 (together with the Original Petition, the "Texas Action"). *See* Exhibit C. Accordingly, this Court should dismiss, stay, or transfer the Florida Action to the Northern District of Texas so that it may be consolidated with the Texas Action and proceed in the proper forum.

## III.   ARGUMENT AND AUTHORITIES

This Florida Action should be dismissed, stayed, or transferred to the Northern District of Texas to avoid piecemeal resolution of the disputes and the risk of conflicting judgments. BTC's Complaint fails to state a claim on the merits as well, but the disposition of those defects is properly left to the court in the first-filed action.

**A.**    **The Court should dismiss, stay or transfer the Florida Action per the first-filed rule.**

This Court has made clear that when multiple cases pending in different federal courts involve overlapping issues and parties, the so called "first-filed rule" applies. "'The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case.'" *MSP Recovery Claims Series 44, LLC v. Pfizer, Inc.*, No. 21-23676-CIV, 2022 WL 17484308, at *2 (S.D. Fla. Nov. 10, 2022) (Moreno, J.) (quoting *Collegiate Licensing Co. v. Am. Cas. Co.*, 713 F.3d 71, 78 (11th Cir. 2013)). *See also* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of

---

[2] BTC failed to notify this Court of the related Texas action, in violation of Local Rule 3.8.

justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.").

When evaluating the first-to-file rule, a court must consider three factors: "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." *MSP Recovery*, 2022 WL 17484308, at \*2 (citing *Women's Choice Pharms., LLC v. Rook Pharms., Inc.*, No. 16-cv-62074, 2016 WL 6600438, at \*2 (S.D. Fla. Nov. 8, 2016)). Clearly, the facts here satisfy these factors. These factors should not be considered with "rigid or inflexible application, but rather the rule should be applied in a manner that best serves the interests of justice." *Id.* (collecting authority).

If the party seeking the transfer to the first-filed venue can establish the above three factors, "the burden shifts to Plaintiffs [of the second-filed suit] to establish that 'compelling circumstances' exist to warrant an exception to the first-filed rule." *Id.* at \*3 (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005)). But, "[i]f the presumption [of the first-filed rule] holds, then the district court can either stay, dismiss, or transfer the second-filed case to the forum in which the first-filed action is pending." *Id.* at \*2. It is undeniable that BTC's Florida Action is the later-filed action between the two pieces of related litigation and should therefore be stayed, dismissed or transferred to the Northern District of Texas.

### 1.      The Texas Action was filed first.

Trade Group filed its claims against BTC in Texas state court on May 10, 2023, weeks before BTC filed the Florida Action on June 2, 2023. This date is important because "[w]hen a case is removed to federal district court . . . [,] the federal court treats everything done in the state court as if it had in fact been done in the federal court." *Orbsat Corp. v. Seifert*, No. 1:21-CV-22436, 2021 WL 5771150, at \*2 (S.D. Fla. Dec. 6, 2021) (Gayles, J.) (quoting *Salery v. United*

*States*, 373 F. App'x 29, 30 n.1 (11th Cir. 2010) (per curiam)). Therefore, notwithstanding that the case was removed to the Northern District of Texas, the date that the state court action is filed, which here is May 10, 2023, is treated as the filing date of a subsequently removed action for first-filed consideration. *See, e.g., id.* (holding that the date a subsequently-removed state court action was filed provided the date for first-filed considerations, and granting motion to transfer to the court of the removed-state action); *Nebula Glass Intern., Inc. v. Budnick Converting, Inc.*, No. 09-61256-CIV, 2010 WL 473330, at *1 (S.D. Fla. Feb. 5, 2010) (Perez, J.). ("Although the Illinois Case began in state court and was subsequently removed to federal court, for purposes of applying the first-filed rule, removal does not affect the primacy of the Illinois Case."); *see also Heritage Schooner Cruises, Inc. v. Acadia Ins. Co.*, No. 09-CIV-22579, 2009 WL 10699880, at *2 (S.D. Fla. Nov. 30, 2009) ("[T]here is substantial authority . . . that the date the removed action was filed in state court is the controlling date for the purposes of determining which of the two actions has priority under the first filed rule." (collecting authority)).  Because Trade Group filed its Original Petition in Texas on May 10, 2023, notwithstanding that it was later removed to Federal court, this date is indisputably earlier than the Florida Action filed on June 2, 2023. Accordingly, this satisfies the first factor of the first-filed rule.

>  **2.**    ***The Florida Action involves the same parties.***

The Texas Action and the Florida Action involve identical parties. This satisfies the second factor of the first-filed rule.

>  **3.**    ***The Florida Action has overwhelmingly similar issues as Trade Group's first-filed Texas Action.***

The Florida Action involves the same underlying facts and questions of law as the Texas Action: the services provided by Trade Group, the invoices provided to BTC, and BTC's payments (or lack thereof), all concerning Bitcoin 2022.

This Court has found that the factor of "similarity of the issues . . . weighs in [the movant]'s favor [when] both actions involve a substantially similar set of operative facts and will involve similar questions of law." *MSP Recovery*, 2022 WL 17484308, at \*3. Moreover, "[r]aising new claims in the second action does not defeat the first-to-file rule. Differences between issues have no bearing so long as their resolutions turn on similar determinations of fact." *Kelly v. Gerber Prods. Co.*, No. 21-60602-CIV, 2021 WL 2410158, at \*1 (S.D. Fla. June 11, 2021) (Singhal, J.) (quotations omitted). That BTC included a new claim for fraudulent inducement and accounting in the second action thus "does not defeat the first-to-file rule" because "their resolutions turn on similar determinations of fact": the circumstances surrounding and terms of the agreement(s) between BTC and Trade Group. Indeed, BTC's count for declaratory judgment perfectly articulates the clear overlap between BTC and Trade Group's claims against each other: "what, if anything, [does] BTC owe[] Trade Group pursuant to the parties' agreement and whether Trade Group has overcharged BTC for services performed." Compl. ¶ 47.[3] That determination is also at the crux of the first-filed Texas Action wherein Trade Group seeks payment in full for the invoices provided to BTC for services performed. *See* Exhibit C. Given the widespread overlap of questions of fact and law between the Texas and Florida Actions, the third factor of the first-filed rule is satisfied.

**4.      *No compelling circumstances rebut the preference of the Texas Action.***

---

[3] Perhaps more noteworthy is BTC's tacit acknowledgement of the overlapping claims by its reliance on the Texas Action to satisfy jurisdictional requirements of this Court:

> [T]his case involves legal and equitable relief **concerning a multimillion-dollar contract** and **a debt Trade Group is claiming it is owed of roughly $5 million.**

Comp. ¶ 3 (emphasis added). While entirely improper, this statement recognizes that Trade Group's claims in the Texas Action are so similar and interrelated with BTC's own claims that the amount in controversy of the Florida Action should necessarily include Trade Group's claims in the Texas Action.

Because Trade Group establishes all three factors to support transfer to the Northern District of Texas, "the burden shifts to Plaintiffs to establish that 'compelling circumstances' exist to warrant an exception to the first-filed rule." *MSP Recovery*, 2022 WL 17484308, at *3 (citing *Manuel*, 430 F.3d at 1135 ("[W]e require that the party objecting to jurisdiction in the first-filed forum carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule.")). "Compelling circumstances" warranting an exception to the first-filed rule typically involve bad faith negotiations, anticipatory suit, and forum shopping. *See id.* (collecting authority).

No compelling circumstances exist here. Furthermore, there is no evidence of forum shopping, as the services provided were primarily furnished from Texas, and the invoices were sent from Texas, by a Texas company, and paid—at least in part—to Texas. If anything, the Florida Action is an attempt to forum shop *by BTC*, as evidenced by its thinly veiled scheme to avoid the Texas Action by filing the instant action without even disclosing the Texas Action to this Court. Accordingly, there is no "compelling circumstance" that warrants an exception to the first-filed rule, and thus, this Court should transfer the Florida Action to the Northern District of Texas, or stay the Florida Action while the Texas Action is pending, in conformance with the first-filed rule.

**B.**   ***Forum non conveniens* provides that the Florida Action should be transferred to Texas.**

Alternatively, the doctrine of *forum non conveniens* supports the transfer to Texas, as Trade Group is a Texas company, and the acts alleged in this litigation all occurred in Texas. The transfer statute, 28 U.S.C. § 1404(a), which embodies a codification and revision of the *forum non conveniens* doctrine, provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981).

Here, there is no doubt that "convenience and justice" support a transfer of the Florida

Action to the Northern District of Texas. Most obviously, *no party (or its witnesses) resides in Florida*. Trade Group is a Texas corporation, and all of its officers and employees work and reside in the Dallas-Fort Worth metroplex. BTC similarly does not have any officers or employees in Florida; it is a Tennessee company, and its officers and employees work and reside in the Nashville area, with the exception of one LLC member who is a citizen of Puerto Rico. But interestingly, BTC is not seeking to litigate in a Tennessee court. Rather, it seeks litigation in Florida, where none of the parties' witnesses resides—a clear indication of forum shopping.

Additionally, the course of conduct between Trade Group and BTC relevant to the claims at issue is not based on physical meetings in Miami but rather the continuous, primarily "remote" back-and-forth invoicing and cost approval between the parties. Trade Group and BTC had meetings twice a week or more leading up to Bitcoin 2022. These meetings were not held in Florida, but primarily remotely, with Trade Group running the virtual meeting from Texas. The Agreement was also initially prepared by Trade Group in Texas. Thus, BTC's claims do not involve Trade Group's *performance in Florida*, but instead focus on the agreed terms and invoices that are either rooted *in* Texas or transpired electronically *from* Texas to Tennessee. Accordingly, whether pursuant to the first-filed rule or *forum non conveniens*, this Court should transfer the Florida Action to the Northern District of Texas, or dismiss or stay the Florida Action while the Texas Action is pending. *See MSP Recovery*, 2022 WL 17484308, at *2.

## C.    The Court should dismiss the Florida Action for lack of personal jurisdiction.

The Court also lacks personal jurisdiction over Trade Group. The Supreme Court has recognized two types of personal jurisdiction: general and specific. *Bristol-Meyers Squibb Co. v. Superior Court of Cal.*, 582 U.S. 255, 262 (2017). For corporations like Trade Group, general jurisdiction is appropriate only where the company "is fairly regarded as at home," such as its state

of incorporation. *Id.* There is no question that Trade Group is subject to general jurisdiction in Texas and not in Florida, where it is both incorporated and headquartered. Thus, for this Court to have personal jurisdiction over Trade Group, it must be that this Court has *specific* personal jurisdiction over Trade Group, which it does not.

For a court to exercise specific jurisdiction, "the suit must arise out of or relate to the defendant's contacts with the forum." *Id.* (quotations omitted) (collecting authority). In *BNSF Ry. Co. v. Tyrrell*, the Supreme Court cited 15 U.S.C. § 22 as an example of a nationwide service of process statute, and repeated the rule that for purposes of general jurisdiction "a corporation that operates in many places can scarcely be deemed at home in all of them." 581 U.S. 402, 414 (2017). With respect to specific jurisdiction, Justice Ginsburg reminded courts that "in-state business" only justifies the exercise of personal jurisdiction to the extent the claims presented relate to that business. *Id.*

The Supreme Court proclaimed in *Bristol-Myers Squibb Co.* that "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally an activity or an occurrence that takes place in the forum State." 582 U.S. at 262 (citations omitted). BTC has failed to provide such an affiliation. Trade Group is a company that provides event production and coordination for trade shows across the country. For a state other than Texas to have jurisdiction over Trade Group, a party must show not only that Trade Group has sufficient contacts with the forum state, but that there is "an activity or occurrence" in the forum state that "underl[ies] the controversy." *See id.* BTC has not provided that connection between its claims and Trade Group's conduct *in Florida*.

Trade Group of course does not deny that it provided services to BTC in connection with a trade show held in Miami. However, Trade Group's *performance in Florida* is not at issue in the

Florida Action. Rather, it is the existence of allegedly breached terms and/or agreements by Trade Group related to Trade Group's *invoicing*. BTC did not provide any specific information of the alleged "representations" on which BTC premises both its breach of contract claim and its fraudulent inducement claim, much less the *location* where the alleged representations took place. Further, the actions "underlying" BTC's Complaint—Trade Group allegedly over-charging BTC and/or providing inaccurate invoices—were primarily sent from Trade Group in Texas (to our knowledge, BTC in Tennessee). Until BTC ceased paying, it paid the invoices to accounts *in Texas*. Invoicing did not occur in Florida. BTC has failed to provide any indication that the alleged agreements (that were then allegedly breached by Trade Group's invoicing conduct) occurred in Florida. Accordingly, the Court lacks personal jurisdiction over Trade Group with respect to the claims presented by BTC in this lawsuit. *See generally BNSF Ry. Co.*, 581 U.S. 402; *Bristol-Meyers Squibb Co.*, 582 U.S. 255. The Florida Action should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

**D.**   **The Court should dismiss the Florida Action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.[4]**

To survive a motion under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a plaintiff need not provide

---

[4] Trade Group recognizes that, should this Court grant its Motion to Transfer, the transferee court (here, the Northern District of Texas) will rule on Trade Group's dispositive Motion to Dismiss pursuant to 12(b)(6). *See Summers-Wood L.P. v. Wolf*, No. 3:08-CV-60/RV/MD, 2008 WL 2229529, at *2 n.1, *4 (N.D. Fla. May 23, 2008) (declining to rule on motion to dismiss, noting that "[n]umerous courts have determined that when a motion to transfer venue is contained within a motion to dismiss or for other relief, it is proper to decide the venue issue first and then, if transfer is granted, deny the remainder of the motion as moot or leave the issue(s) to be more properly dealt with by the judge who will be presiding over the litigation." (quotations omitted) (collecting authority).

"detailed factual allegations," their complaint must establish "more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* When considering a motion to dismiss, the court is generally limited to the facts contained in the complaint and attached exhibits, but it may consider documents that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F. 3d 949, 959 (11th Cir. 2009).

### 1.   BTC's breach of contract claim does not specify a contract or provision

BTC's allegation of breach of contract fails under both Texas and Florida law. However, because the Agreement does not contain a choice of law provision, a court ruling on the merits of the claim will first need to determine the applicable law.[5] Regardless of which state law applies— which is unclear in the Complaint—BTC's Complaint must also satisfy the *federal* pleading requirements for a breach of contract claim. But it falls far short.

The Federal Rules of Civil Procedure require the plaintiff to "allege which provision of the contract has been breached." *Pierce v. State Farm Mut. Auto. Ins. Co.*, No. 14-22691-CIV, 2014 WL 7671718, at *4 (S.D. Fla. Dec. 17, 2014); *see also Cavalieri*, 2018 WL 4194080, at *4 ("In order to allege a material breach in accordance with the pleading standards under the Federal Rules of Civil Procedure, the plaintiff must allege which provision of the contract has been breached." (quotations omitted)); *Sivertson v. Citibank*, 390 F. Supp. 3d 769, 787 (E.D. Tex. 2019) ("[A]s a general rule, a plaintiff suing for breach of contract must point to a specific provision in the contract

---

[5] For thoroughness, both Florida and Texas have similar pleading requirements in addition to the federal requirement. *See Cavalieri v. Avior Airlines C.A.*, No. 17-CV-22010, 2018 WL 4194080, at *4 (S.D. Fla. Aug. 10, 2018), *report and rec. adopted*, No. 17-22010-CIV, 2018 WL 5098873 (S.D. Fla. Sept. 18, 2018); *Stewart v. JP Morgan Chase Bank Nat. Ass'n*, No. 3:12-CV-1361-M-BK, 2012 WL 4932169, at *2 (N.D. Tex. Oct. 1, 2012), *report and rec. adopted*, No. 3:12-CV-1361-M-BK, 2012 WL 4932663 (N.D. Tex. Oct. 16, 2012).

that was breached by the defendant." (collecting authority)).

In *Cavalieri*, this Court granted the defendant's motion to dismiss for failure to state a claim wherein the plaintiff's complaint only plead "that Defendant breached the written contract 'by charging monies not provided under the terms and conditions of the contract in order to fulfill their obligations under the contract' and that Plaintiffs were damaged thereby." 2018 WL 4194080, at *4. Although the Court reviewed and took judicial notice of the various contracts between the parties, it noted that "the attached contract omits any terms relating to price [the alleged term at issue], from which the Court could determine the terms of the express contract on which Plaintiffs rely, much less permit a trier of fact to determine if those terms were breached." *Id.* at *5. The Court found that "[s]ince the essence of a breach of contract case is that a provision of an agreement has been breached, 'where the facts pleaded are insufficient to determine which of the provisions may have been breached, the claim cannot survive a motion to dismiss.'" *Id.* at *6 (quoting *Gentry v. Harborage Cottages-Stuart, LLLP*, No. 08-14020-CIV, 2008 WL 1803637, at *3–4 (S.D. Fla. Apr. 21, 2008) (dismissing complaint for failure to sufficiently reference the specific terms of the purchase agreement alleged to have been breached)) (collecting authority).

The same deficiency exists here. BTC has vaguely plead that "Trade Group has breached the parties' contract by charging BTC in an amount in excess of the 10–20% agreed-upon profit margin and by submitting quotes and invoices to BTC that were not true and accurate." BTC Comp. ¶ 31. BTC fails to point to what contract it believes was breached, much less which provision of the supposed contract was actually breached by Trade Group's alleged conduct. That is because the terms do not exist. BTC asserts the same anemic, generalized statement deemed insufficient in *Cavalieri*. *See* 2018 WL 4194080, at *4 (dismissing breach of contract claim because pleading only pled breach "'by charging monies not provided under the terms and

conditions of the contract in order to fulfill their obligations under the contract' and that Plaintiffs were damaged thereby'"). The Agreement is the only written agreement regarding Trade Group's services and BTC's payment thereof (other than piecemeal approvals of change orders and add-ons). Trade Group invites the Court to examine the terms of the Agreement. But, as in *Cavalieri*, this Court will be unable to find the term BTC claims has been breached. *Id.* at *5.

If BTC is instead seeking to imply a term beyond the four-corners of the Agreement, it has similarly failed to sufficiently plead it. BTC must first plead the *existence of* that contract. *See id.* at *4. "To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citations omitted). BTC has pled none of these items. Indeed, both Trade Group and this Court remain in the dark of when these alleged contract terms were entered into, if any consideration was given in exchange for these terms, and what the essential terms were (e.g., if the mark-up limit was to be applied to the cumulative cost and charge for Bitcoin 2022, or instead per line item). It is impossible for Trade Group to defend itself if it doesn't know the specifics of the alleged agreement that BTC alleges it breached. Accordingly, BTC's breach of contract claim should be dismissed for failure to state a claim under Rule 12(b)(6).

### 2.      Fraudulent inducement is not alleged with particularity.

BTC similarly fails to plead its fraudulent inducement claim with the heightened level of particularly required by Rule 9(b).[6] Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Indeed, this very Court recently highlighted the Eleventh Circuit's explanation of the heightened pleading requirement:

The particularity rule [Rule 9(b)] serves an important purpose in fraud actions by

---

[6] Once again, BTC failed to specify under which state law it believes its claim is governed. But for purposes of this Motion under Rule 12(b)(6), only the federal pleading standard need be applied.

> alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior. . . . Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Silver Crown Invts. v. Team Real Estate Mgmt.*, 349 F. Supp. 3d 1316, 1329 (S.D. Fla. 2018) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quotations and internal citations omitted)). Moreover, "[plaintiffs] must provide 'a sufficiently narrow time frame from which defendants could derive notice as to when the representations were made.'" *Id.* (quoting *Galstaldi v. Sunvest Cmtys. USA, LLC*, 637 F.Supp.2d 1045, 1059 (S.D. Fla. 2009).

BTC has failed to meet these requirements, because the Complaint does not provide: (1) what statements or oral representations were made; (2) the time, the place, or by whom each statement was made; (3) in what manner the statements were made or the manner in which BTC was misled; and (4) what Trade Group obtained as a consequence of its alleged fraud. *See id*. With these myriad deficiencies, BTC's "allegations do not sufficiently give [Trade Group] fair notice of the claim against them," and thus its fraudulent inducement claim should be dismissed pursuant to Rule 12(b)(6). *See id*. (dismissing fraudulent inducement claim for "fail[ing] to identify which Defendant made the statement, where, to which Plaintiff, and why those statements were in fact fraudulent"); *see further Zarrella v. Pac. Life Ins., Co*, 755 F.Supp.2d 1218, 1223 (S.D. Fla. 2010) (dismissing all fraud-based claims, including a fraudulent inducement claim, because the complaint "fail[ed] to identify the time and place of the alleged statements regarding the insurance policies, who made those statements, and what information [defendant] had or could have had in its possession to indicate that the statements were false when made.").

**3.**      ***The Fraudulent Inducement Claim is barred by the economic loss rule.***

BTC's claim for fraudulent inducement is also barred by the economic loss doctrine, as it alleges a situation where fraud occurs in the performance of the contract. *See Marlite, Inc. v. Eckenrod*, No. 10-23641-CIV, 2012 WL 3614212, at *5 (S.D. Fla. Aug. 21, 2012) (citing *Allen v. Stephan Co.*, 784 So.2d 456, 457 (Fla. 4th DCA 2000)). Count two generally alleges, with no particulars, that the fraud concerns statements that Trade Group "would only charge BTC for its services at a rate such that Trade Group's profit margin would not exceed 10–20% of Trade Group's expenses and that it would only submit invoices and quotes to Trade Group that were true and accurate." *See* Compl. ¶ 35. However, according to paragraphs 9, 10, 11, and 12 of the Complaint, such alleged assertions by Trade Group were made long after Trade Group was hired to be BTC's general service contractor, and are connected to the "final invoice." Therefore, this claim is connected to performance of the contract and whether BTC complied with the alleged terms, not whether BTC was induced into a contract with Trade Group. *See Topp, Inc. v. Uniden Am. Corp.*, 513 F. Supp. 2d 1345, 1351 (S.D. Fla. 2007). The economic loss rule prohibits the re-labelling of a breach of contract as tortious conduct, and BTC's Complaint attempts to do exactly that.

**4.**      ***BTC's claim for accounting fails on its face.***

BTC also failed to sufficiently plead its claim for an accounting. Referring to precedent from the Supreme Court of the United States, this Court recently stated:

> In a situation like this, where causes of action for both a breach of contract and equitable accounting are asserted simultaneously with respect to the same underlying facts, the plaintiff can only maintain both causes of action by showing "that the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them."

*Technolojoy, LLC v. BHPH Consulting Servs., LLC*, No. 19-23770-CIV, 2021 WL 8566755, at *6

(S.D. Fla. May 14, 2021) (Moreno, J.) (quoting *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962) (internal citations and quotations omitted)). This Court went on to plainly state that "a claim for equitable accounting should be dismissed where the evidentiary facts alleged in a complaint show neither complexity nor inadequacy of a legal remedy." *Id.* (collecting authority).[7] Indeed, "the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met." *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 694 F. Supp. 2d 1275, 1279 (S.D. Fla. 2010) (Seitz, J.) (quoting *Dairy Queen*, 369 U.S. at 478) (dismissing claim for accounting because "the Agreement indicate[d] that the nature of the accounts [was] not so complicated that a jury would be unable to ascertain damages and federal courts strongly disfavor taking damages calculations away from a jury").

For example, in *Technolojoy*, this Court held that a complaint for which "[t]he jury would simply be charged with determining what Plaintiffs paid and whether Defendants provided goods in consideration for those payments" failed to sufficiently plead financial complexity. 2021 WL 8566755, at *6. Because "[t]he transactions at issue [were] not so complex that an ordinary jury [would be] incapable of understanding them," this Court dismissed the claim for equitable accounting for failure to state a claim. *Id.* at *7.

The same circumstances exist here. Although BTC baldly claims that the "parties' transaction is complex," it does not demonstrate that "an ordinary jury is incapable of understanding" that transaction. *See* Comp. at ¶ 42; *Technolojoy*, 2021 WL 8566755, at *7. If BTC's claims were to proceed to trial—which they should not—the transactions at issue are no different than those in *Technolojoy*: "[t]he jury would simply be charged with determining what

---

[7] Equitable accounting may also be permitted if there is a showing of a fiduciary relationship between the parties. *See Technolojoy*, 2021 WL 8566755, at *6. Because BTC has not made such an allegation—nor could it—this option will not be further explored in this Motion.

[BTC] paid [or did not pay] and whether [Trade Group] provided goods [and services] in consideration for those payments." *See* 2021 WL 8566755, at *6.

BTC's barebones recitation of the elements of an accounting request hardly provide for the "rare case" in which an accounting is permitted to proceed. *See Essent Healthcare*, 694 F. Supp. 2d at 1279. Precedent from this Court and the Supreme Court alike require that the allegations demonstrate transactions so complex that Trade Group should be deprived from a jury's consideration due to their complexity. BTC failed to do so. BTC's accounting claim should thus be dismissed for failure to state a claim, pursuant to Rule 12(b)(6).

### 5.   *The declaratory judgment claim fails as a matter of law.*

Under the Declaratory Judgment Act, a court may, "in a case of actual controversy[,] ... declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). BTC's request for a declaratory judgment of "the parties' rights under the contract" and that "BTC owes no more money to Trade Group and that BTC has overpaid Trade Group for charges that were not validly owed" is impermissible for three reasons. *See* Compl. ¶ 48.

First, BTC's request is a mirror image of the claims brought against it in the Texas Action. This Court has noted that "counterclaims raise a common issue by claiming declaratory judgement parallel to breach of contract. Many district courts in the Eleventh Circuit, including this one, have found that declaratory judgment is inappropriate when a parallel, [breach of contract] claim is so factually analogous as to render it superfluous. " *Liberty Surplus Ins. Corp. v. Kaufman Lynn Constr., Inc.*, No. 22-80203, 2022 WL 18910347, at *2 (S.D. Fla. Oct. 26, 2022); *see Ven-Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982) ("In its discretion, a district court may decline to entertain a declaratory judgment action on the merits when a pending

proceeding in another court will fully resolve the controversy between the parties."). In other words, when a declaratory action is simply "the mirror image" of the opposing party's claim, the declaratory action should be dismissed because the relief sought can be achieved by the resolution of the opposing party's already pending claim. *See Liberty Surplus*, 2022 WL 18910347, at *2–3 (dismissing declaratory action with prejudice). Here, the Texas Action alleges breach of contract by BTC and that BTC owes the amount outstanding under the contract; and BTC's declaratory action seeks a declaration that it did *not* breach the contract and does *not* owe Trade Group money. *See* Compl. ¶ 48. Accordingly, this is a mirror image declaratory action and should be dismissed. *See Liberty Surplus*, 2022 WL 18910347, at *2.

Second, the declaration BTC seeks is also incorporated in its own breach of contract claim against Trade Group. "A court must dismiss a claim for declaratory judgment if it is duplicative of a claim for breach of contract and, in effect, seeks adjudication on the merits of the breach of contract claim." *Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co.*, No. 11-21163-CIV, 2012 WL 1416428, at *2 (S.D. Fla. Apr. 24, 2012) (citations omitted). *See also Liberty Surplus*, 2022 WL 18910347, at *2 (dismissing declaratory action because "[Defendants]'s [declaratory action] counterclaim is necessarily subsumed by [Defendant]'s breach of contract counterclaim"); *Trilogy Props. LLC v. SB Hotel Assocs.*, No. 09-21406-CIV, 2010 WL 7411912, at *5 (S.D. Fla. Dec. 23, 2010) (dismissing claim for declaratory relief where "declaratory judgment in the plaintiffs' favor offer[ed] nothing beyond what a victory on the breach-of-contract claim offer[ed]."). Because BTC seeks a declaration of "the parties' rights under the contract," while also bringing its own breach of contract claim based on the same alleged contract, its declaratory action should be dismissed as duplicative of its breach of contract claim.

Lastly, this Court has stated:

> Questions regarding whether torts have been committed or a contract was adequately performed [are] unrelated to the purpose behind the Declaratory Judgment Act. Indeed, the purpose of the Declaratory Judgment Act is to clarify the legal relations at issue and to settle controversies ***prior to a legal breach of duty or contract***.

*Pediatrix Med. Grp. v. Aetna Inc.*, No. 18-60908-CIV, 2018 WL 4997092, at *6 (S.D. Fla. Aug. 27, 2018) (emphasis added) (quoting *Sierra Equity Grp. v. White Oak Equity Partners*, 650 F. Supp. 2d 1213, 1231 (S.D. Fla. 2009)). Thus, "declaratory relief is inappropriate where it requires the court to make factual determinations regarding past conduct." *Id.* (citation omitted).

For example, if a defendant believes "in good faith that Plaintiffs have overbilled, they are entitled to seek redress by asserting claims against Plaintiffs," but may not instead or additionally seek a declaratory judgment that the plaintiffs overbilled. *Id.* But that is exactly what BTC attempts to do here. BTC is asking this Court to examine Trade Group's conduct and invoices, and declare that Trade Group overbilled BTC and that BTC owes Trade Group no money. *See* Compl. ¶ 48. This is squarely a request for the Court to "make factual determinations regarding past conduct" and should therefore be dismissed. *See Pediatrix Med.*, 2018 WL 4997092, at *6.

## IV.  <u>CONCLUSION</u>

The proper place for resolution of BTC's grievances is in the Northern District of Texas, where litigation between the parties concerning the agreements and invoices in question is already pending. For that reason, and all other meritorious reasons discussed herein, BTC's claims against Trade Group should be dismissed, stayed, or transferred to the court with the first-filed case involving this same subject matter.

WHEREFORE, Defendant Trade Group respectfully requests that this Court grant this Motion and transfer this action to the Northern District of Texas, or in the alternative stay or dismiss the action for the aforementioned reasons, and grant such other relief the Court deems just and appropriate.

Dated: July 5, 2023

Respectfully submitted,

/s/*Alejandro J. Paz*
Jennifer C. Glasser
Florida Bar No.: 123145
Alejandro Paz
Florida Bar No.: 1011728
98 SE 7th St
Miami, FL 33131-3522
Office: 305-374-5600
Fax: 305-374-5095

**AKERMAN LLP**


Lindsey M. Brown (*pro hac* pending)
Texas Bar No. 24087977
lbrown@jw.com
Elizabeth Pittman (*pro hac* pending)
Texas Bar No. 24110823
epittman@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Direct Phone (214) 953-6142
Direct Fax (214) 661-6899

**JACKSON WALKER LLP**


**ATTORNEYS FOR DEFENDANT
THE TRADE GROUP, INC.**

## <u>CERTIFICATE OF CONFERENCE</u>

This is to certify, pursuant to SDFL Local Rule 7.1(a)(3), that on July 4, 2023 and July 5, 2023, counsel for TTG conferred with counsel for BTCM regarding transferring this matter to the Northern District of Texas. BTCM's counsel opposed this relief.

*/s/ Alejandro J. Paz*
Alejandro J. Paz

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on July 5, 2023, a true and correct copy of the foregoing document was filed with the clerk of the court for the U.S. District Court, Southern District of Florida, using Court's ECF system on all counsel of record.

*/s/ Alejandro J. Paz*
Alejandro J. Paz