UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CIVIL CASE NO. 1:23-CV-22060-FAM

BTC MEDIA, LLC,

    Plaintiff

v.

THE TRADE GROUP, INC.,

    Defendant.
_____/

**DEFENDANT THE TRADE GROUP, INC.'S REPLY
IN SUPPORT OF MOTION TO DISMISS AND IN SUPPORT OF
TRANSFERRING CASE TO THE NORTHERN DISTRICT OF TEXAS**

Defendant The Trade Group, Inc. ("Trade Group" or "Defendant") files this Reply in Support of its Motion to Dismiss[1] and in Support of Transferring this Case to the Northern District of Texas ("Motion"). Plaintiff BTC Media, LLC ("BTC" or "Plaintiff") now asserts that this Court should stay this case. However, transferring this case to the Northern District of Texas would be the more appropriate course of action under Florida law and in terms of judicial economy and efficiency for multiple reasons: (i) Trade Group first filed its claims in Texas court on May 10, 2023; (ii) this action involves the same parties and similar issues as the Texas Action; (iii) there are no compelling circumstances to rebut the preference of the Texas Action; and (iv) *forum non conveniens* provides that this action should be transferred to Texas. BTC's Opposition falls far short of overcoming the presumption of the first-filed rule, fails to demonstrate that transfer pursuant to 28 U.S.C. § 1404(a) is improper, and fails to remedy the plethora of issues identified with each of its claims. These deficiencies justify the transfer or dismissal of this case to Texas. A Proposed Order transferring this case is attached hereto as **Exhibit A**.

## I. ARGUMENT AND AUTHORITIES

A. <u>**Transfer to the Northern District of Texas is proper under the first-filed rule.**</u>

As Trade Group explained in its Motion, the first-filed rule establishes "a strong presumption" that "when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Manuel v. Convergys Corp.*, 430

---

[1] Trade Group recognizes that, should this Court grant its Motion to Transfer, the transferee court (here, the Northern District of Texas) will rule on Trade Group's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Summers-Wood L.P. v. Wolf*, No. 3:08-CV-60/RV/MD, 2008 WL 2229529, at *2 n.1, *4 (N.D. Fla. May 23, 2008) (declining to rule on motion to dismiss, noting that "[n]umerous courts have determined that when a motion to transfer venue is contained within a motion to dismiss or for other relief, it is proper to decide the venue issue first and then, if transfer is granted, deny the remainder of the motion as moot or leave the issue(s) to be more properly dealt with by the judge who will be presiding over the litigation." (quotations omitted) (collecting authority)).

F.3d 1132, 1135 (11th Cir. 2005); *MSP Recovery Claims Series 44, LLC v. Pfizer, Inc.*, No. 21-23676-CIV, 2022 WL 17484308, at *2 (S.D. Fla. Nov. 10, 2022) (Moreno, J.) (quoting *Collegiate Licensing Co. v. Am. Cas. Co.*, 713 F.3d 71, 78 (11th Cir. 2013)). Once the party seeking the transfer establishes that the first-filed rule applies, as Trade Group has, the plaintiff can only overcome that presumption with proof that "'compelling circumstances' exist to warrant an exception to the first-filed rule." *MSP Recovery Claims Series 44, LLC v. Pfizer, Inc.*, No. 21-23676-CIV, 2022 WL 17484308, at *2 (S.D. Fla. Nov. 10, 2022) (Moreno, J.) (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005)). But BTC has not offered any such proof—nor can it. In fact, BTC's response ***fails to even address*** Trade Group's first-filed argument.[2] *See generally* D.E. 19. This failure alone is sufficient to justify transfer of this case to the Northern District of Texas. *See Zampa v. JUUL Labs, Inc.*, No. 18-25005-CIV, 2019 WL 1777730, at *6 (S.D. Fla. Apr. 23, 2019) (Torres, J.) (granting motion to transfer where "Plaintiffs only spen[t] two pages [of their response] with respect to the first-filed rule and the remaining pages in opposition to Defendant's motion to transfer pursuant to 28 U.S.C. § 1404."); *see also Elliott v. Williams*, 549 F. Supp. 3d 1333, 1340–41 (S.D. Fla. 2021) (Altman, J.) (transferring case to first-filed forum where plaintiff objected to transfer but offered no compelling circumstances to rebut presumption of first-filed rule; "Since the first-to-file rule plainly applies—and given that [the plaintiff] cannot show 'compelling circumstances'—we needn't say more."); *Melendez v. Town of Bay Harbor Islands*, No. 14-22383-CIV, 2014 WL 6682535, at *7 (S.D. Fla. Nov. 25, 2014) (Altonaga, J.) (holding that arguments a party fails to address in its response are conceded).

---

[2] Rather than attempt to rebut the presumption of the first-filed rule, BTC concedes that the rule applies by noting the similarities between this action and the Texas Action throughout its Opposition, and even refers to the Texas Action as "the first-filed case" and to the Northern District of Texas as "the first-filed court." *See* D.E. 19 at 3 (citations and quotations omitted).

Presumably cognizant of the fact that any attempt to rebut the first-filed presumption would be futile, BTC relies on non-binding authority for the idea that a stay—and not a transfer—is appropriate here. D.E. 19 at 3. But the law in this circuit is clear: "When the first-filed rule applies, the proper course is to ***transfer*** the second-filed case to the first-filed court to determine how the cases should proceed." *Savage v. Seterus, Inc.*, No. 2:19-CV-14256, 2020 WL 230982, at *3 (S.D. Fla. Jan. 15, 2020) (Rosenberg, J.) (emphasis added) (citing *Laskaris v. Fifth Third Bank*, 962 F. Supp. 2d 1297, 1299 (S.D. Fla. 2013) (King, J.)); *Elliott*, 549 F.Supp.3d at 1338 ("The 'first-to-file' rule . . . requires that the second-filed case be ***dismissed or transferred*** to the district where the first-filed case is pending." (emphasis added) (citing *Manuel*, 430 F.3d at 1135)); *In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313, 1325 (S.D. Fla. 2012) (King, J.).

Moreover, the off-chance that the Texas Action (D.E. 18-3) "may" be dismissed does not, as BTC contends, "preclude transfer." D.E. 19 at 1. *See Abreu v. Pfizer, Inc.*, No. 21-62122-CIV, 2022 WL 2355541, at *6–7 (S.D. Fla. June 22, 2022) (granting motion to transfer per first-filed rule and expressly rejecting the argument that dismissal of first-filed case precludes application of first-filed rule), report and recommendation adopted, No. 21-62122-CIV, 2022 WL 3370932 (S.D. Fla. Aug. 16, 2022) (Moreno, J.); *see also Salt Life, LLC v. Shaka Life, Inc.*, No. 3:18-CV-1151-J-39JRK, 2018 WL 8332698, at *3 (M.D. Fla. Nov. 30, 2018) ("If this Court does not transfer this action, there is no guarantee that the Southern District will follow suit and dismiss the [first-filed action]. In that situation, '[t]he parties would then be left with the exact situation that the first-filed rule was designed to prevent—lawsuits on identical issues proceeding simultaneously in separate courts.'" (citations omitted)); *AAMP v. Audionics Sys., Inc.*, No. 8:12-CV-2922-T-33TGW, 2013 WL 1104889, at *2–3 (M.D. Fla. Mar. 18, 2013) (second-filed Florida court transferred case to first-filed court to determine whether "Florida action should be allowed to proceed or whether it

should be consolidated with the [first-filed] action, as well as all issues regarding jurisdiction and venue."). The Court should therefore transfer this case to Texas per the first-filed rule.

B. **Transfer to the Northern District of Texas is proper under 28 U.S.C. § 1404.**

BTC waived any argument against the transfer of this case when it failed to establish that compelling circumstances warrant an exception to the first-filed rule. *See Zampa*, 2019 WL 1777730, at *6; *Elliott*, 549 F. Supp. 3d at 1340–41. But even if that failure were not dispositive, *forum non conveniens* would still warrant transfer to Texas. *See* D.E. 18 at 8. In support of its claim that "none of the [28 U.S.C.] § 1404(a) factors" supports a transfer, BTC relies on (1) the fact that it chose to litigate in Florida, (2) the alleged existence of "some" non-party witnesses in Florida, and (3) its tired argument that the deposit invoice agreement (the "Agreement") was performed in Florida. D.E. 19 at 4–7. None of these suggests that transfer would be improper.

"First, [BTC's] choice of forum in this case—not its home state of [Tennessee]—is entitled to minimal deference." *Sunscreen Mist Holdings, LLC v. Snappyscreen, Inc.*, No. 18-20971-CIV, 2019 WL 8405208, at *3 (S.D. Fla. Feb. 11, 2019) (Gayles, J.) (citation omitted) (transferring case where plaintiff chose forum that was not its home and defendant's relevant employees resided in transferee forum). And "where a plaintiff has chosen a forum that is not its home forum, . . . it is ***considerably easier*** to satisfy the burden of showing that other considerations make transfer proper." *Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007) (Moore, J.) (emphasis added) (transferring case where plaintiff chose forum that was not its home and defendant was headquartered in transferee forum).

Second, the information BTC seeks from "some" allegedly Miami-based, non-party witnesses can just as easily be obtained from Trade Group. But even if that weren't the case, that "some" of Trade Group's vendors might reside in Florida does not justify continued litigation of this case in Florida. Trade Group's actual costs would be established by invoices—not testimony—

and "in a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of the documents is irrelevant." *See Microspherix LLC v. Biocompatibles, Inc.*, No. 9:11-CV-80813-KMM, 2012 WL 243764, at *3 (S.D. Fla. Jan. 25, 2012) (Moore, J.) ("Though Biocompatibles argues that most relevant documents and other physical evidence are located in Oxford, Connecticut, Biocompatibles has not alleged that any of these sources of proof are incapable of being transmitted or shipped to Miami."). And surely, a few vendors' Florida residence is outweighed by the fact that nearly all of Trade Group's employees, and thus all of its witnesses, reside in Texas. *Sunscreen Mist Holdings, LLC*, 2019 WL 8405208, at *3 ("Here, all of [the movant's] employees are located in the Eastern District of New York. Thus, the convenience of witnesses favors transfer."); *see also Abreu*, 2022 WL 2355541, at *17 (expressly rejecting the argument that Eleventh Circuit precedent "requires a party to name witnesses with specificity.").

Finally, BTC's argument that the Agreement was performed in Florida is nonsensical.[3] In July 2021, BTC hired Trade Group to provide turnkey management, planning, and production services for a conference to be held in Miami in April 2022. *See* D.E. 18 at 1–3. Trade Group provided those services, manufactured various items, and invoiced BTC for those services and goods from its headquarters in Texas for nine months before traveling to Florida to execute the three-day event. *Id*. BTC cannot reasonably contend that Trade Group's brief presence in Florida neutralizes its nine-month long performance in Texas. And, perhaps more importantly, BTC's suit is not concerned with the quality of services provided in Florida over those three days, but with the accuracy of the invoicing conducted in Texas. By BTC's own logic, Texas law governs that issue. *See* D.E. 19 at 5 (citing *Higgins v. West Bend Mut. Ins. Co.*, 85 So. 3d 1156, 1157 (Fla. 5th

---

[3] *See* Exhibit B, Pl.'s Resp. to Def.'s Mot. Dismiss in the Northern District of Texas at 12–19.

DCA 2012) ("[Q]uestions related to the manner or method of performance under a contract are determined by the law of the place of performance.")).

Because Florida is not BTC's home state, Trade Group's 28 U.S.C. § 1404 bar is low. By demonstrating that BTC's non-party witnesses' Miami residence is irrelevant, that most—if not all—of Trade Group's witnesses reside in Texas, and that the Agreement was performed in Texas, Trade Group has certainly surpassed that bar. (And, again, because the first-filed rule clearly applies and has gone unrebutted, that bar is redundant in any instance.) This case should thus be transferred to the Northern District of Texas.

### C. Dismissal is proper under Federal Rule of Civil Procedure 12(b)(6).

In the event this Court concludes that transfer of this case to the Northern District of Texas is improper, it should dismiss BTC's Amended Complaint pursuant to Rule 12(b)(6) because (1) BTC's breach of contract claim is deficient; (2) its fraudulent inducement and breach of contract claims are indistinguishable; (3) its fraudulent inducement claim lacks particularity; (4) its claim for an accounting is improper; and (5) its declaratory judgment claim is improper.

#### 1. *BTC's breach of contract claim is deficient.*

BTC has not—and cannot—plead the existence of the contract upon which it sues. Trade Group plainly demonstrated that BTC's version of the facts do not support a claim for breach of contract. D.E. 18 at 9–12. Rather than cure its Amended Complaint's deficiencies with proof of an offer, an acceptance, the exchange of consideration, or the specific terms of the contract, BTC rephrases the facts from its *Original* Complaint and contends—for the first time—that BTC and Trade Group are suing on the same contract. D.E. 19 at 6–7. This is simply incorrect.[4]

---

[4] That Trade Group is suing on a written contract while BTC seeks to sue on an unsubstantiated oral agreement does not preclude application of, or transfer of this case pursuant to, the first-filed rule because the facts and issues underlying each lawsuit are identical. *See Zampa*, 2019 WL 1777730, at *5 ("The final [first-filed rule] factor cuts in favor of transfer because—while the

BTC is suing Trade Group for breach of an alleged oral contract dated January 27, 2022. Trade Group is suing BTC for breach of a written contract entered into on or about April 3, 2022, which provides the following: "[Trade Group] agrees to sell to [BTC] and [BTC] agrees to purchase goods and/or services described above on the terms and conditions within this agreement." D.E. 18-1 at 2. Nowhere within the Agreement does Trade Group agree to limit the extent to which it marks up its costs, nor does BTC limit the amount it was willing to pay Trade Group for its services. Instead, the Agreement clearly lists the remaining amount due to Trade Group, expressly notes that this amount was an estimate and that the final invoice would reflect the total amount due, and obligates BTC to pay the total amount under the final invoice. *Id*. Thus, even if BTC *could* prove the existence of an oral agreement as to markups, that agreement would directly contradict the express terms of the later, written contract and would not change the outcome here. *See Ungerleider v. Gordon*, 214 F.3d 1279, 1284 (11th Cir. 2000) (holding that even if there is "'extrinsic proof'" of "'a contemporaneous independent agreement amounting to a separate transaction[,]'" that evidence "may not contradict the terms of the written agreement." (quoting *Schwartz v. Zaconick*, 68 So. 2d 173, 175 (Fla. 1953) (declining to consider evidence of contemporaneous oral agreement that makers of promissory note were not required to pay interest as specified in note))). BTC's failure to adequately plead the existence of a contract or any terms beyond the four corners of the Agreement, or prove that the Agreement included any subsidiary

---

issues are not identical—there is substantial overlap between this case and the consolidated action." (citing *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 730 (5th Cir. 1985) (explaining that issues need not be identical, but where there is substantial overlap between the two suits, the first-filed action takes priority))); *Nat'l Beverage Corp. v. Energy Brands, Inc.*, No. 08-60792-CIV, 2008 WL 11333336, at *4 (S.D. Fla. Aug. 14, 2008) (noting that "the existence of additional claims alone does not" preclude transfer under the first-filed rule). BTC's claims here might be properly raised as counter-claims or in defense to Trade Group's claims in the Texas Action—not on their own in Florida.

agreement as to markups, requires that its breach of contract claim be dismissed.

### 2. *BTC's fraudulent inducement and breach of contract claims are indistinguishable.*

A representation forming the basis for a breach of contract claim cannot also form the basis for a fraudulent inducement claim. *See Sun Life Assurance Co. v. Imperial Holdings Inc.*, No. 13-80385-CIV, 2016 WL 10565034, at *5 (S.D. Fla. Sept. 22, 2016) (Brannon, J.) (independent tort doctrine bars fraudulent inducement claims "where the misrepresentations forming the basis for the fraud also form the basis for the breach of contract claim.") (collecting authority). Nonetheless, BTC's Amended Complaint tries to do exactly that. The representation at the center of BTC's breach of contract claim is Trade Group's alleged promise that its markups would not exceed 10–20% of its actual costs (at least on "certain" items, although it is still unclear), which Trade Group purportedly breached by marking up its costs by more than 10–20% (again, it is unclear which items where so-marked up). D.E. 19 at 6. The representation at the center of BTC's fraudulent inducement claim is ***also*** Trade Group's alleged promise that its markups would not exceed 10–20% of its actual costs, which Trade Group purportedly rendered fraudulent by marking up its costs by more than 10–20% (with the same lack of clarity). *Id*. at 8–10. Clearly, both claims are based on the same alleged (and unclear) promise. The fraudulent inducement claim cannot proceed. *See Sun Life Assurance Co.*, 2016 WL 10565034, at *5; *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, 2014 WL 2215770, at *5 (S.D. Fla. 2014) (Rosenbaum, J.).

### 3. *BTC's fraudulent inducement claim does not satisfy Rule 9(b).*

BTC's fraudulent inducement claim fails to satisfy the particularity requirement of Rule 9(b). Fed. R. Civ. P. 9(b). Like its Amended Complaint, BTC's Response is riddled with inconsistencies regarding Trade Group's alleged promise to limit its markups, fails to identify the specific line items to which that limitation applied, does not describe what Trade Group obtained

as a consequence of its alleged fraud, and fails to specify (beyond "a few examples") which line items Trade Group marked up by more than 10–20%. D.E. 19 at 10. And while BTC identifies Neeshu Hajra as the individual who made the statement regarding markups, it "does not allege that [Hajra] knew the statement was false when he made it[.]" *See Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022); *Biodynamic Techs., Inc. v. Chattanooga Corp.*, 658 F. Supp. 266, 269 (S.D. Fla. 1987) (Spellman, J.) (proof that statement was false when made must be established "'by evidence other than subsequent failure to keep the promise or subjective surmise or impression' of the Plaintiff." (quoting *Farmers & Merchants Bank v. Petty*, 664 S.W.2d 77, 81 (Tenn. Ct. App. 1983))). BTC's failure to cure these deficiencies justifies dismissal of its fraudulent inducement claim pursuant to Rule 12(b)(6).

### 4. *BTC failed to cure the problems identified with its claim for an accounting.*

BTC's claim for an accounting is improper. A party seeking an accounting "'must show the existence of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate.'" *Technolojoy, LLC v. BHPH Consulting Servs., LLC*, No. 19-23770-CIV, 2021 WL 8566755, at *6 (S.D. Fla. May 14, 2021) (Moreno, J.) (emphasis added) (quoting *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1540 (11th Cir. 1990)). Here, BTC alleges "an arms-length relationship" and Trade Group admits "to the existence of [the Agreement]." *See id.* (citing *N. Brevard Hosp. Dist. v. McKesson Techs., Inc.*, No. 616CV637ORL40DCI, 2017 WL 951672, at *6 (M.D. Fla. Mar. 10, 2017)). "Therefore, [BTC's Amended Complaint] does not establish a fiduciary relationship nor a lack of an adequate remedy at law." *Id*. Moreover, any questions concerning the accuracy of Trade Group's invoicing, as BTC admits, "may be resolved through discovery." D.E. 19 at 8. And "'[w]here a party [has] the opportunity to establish their damage claim through discovery, a request for accounting is not appropriate.'" *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 694 F. Supp. 2d 1275, 1281 (S.D. Fla. 2010) (Sietz, J.)

(quoting *Centrix HR, LLC v. On-Site Staff Mgmt., Inc.*, No. CIV. A. 04-5660, 2008 WL 2265266, at *12 (E.D. Pa. June 3, 2008), aff'd in part, remanded in part, 349 Fed. Appx. 769 (3d Cir. 2009), and adhered to, No. CIV.A. 04-5660, 2010 WL 1644354 (E.D. Pa. Apr. 20, 2010)). BTC's accounting claim should accordingly be dismissed for failure to state a claim.

### 5. *BTC failed to cure the problems identified with its declaratory judgment claim.*

As explained in the Motion, BTC's declaratory judgment claim is impermissible because it mirrors the claims brought against BTC in the Texas Action and is incorporated in BTC's own breach of contract claim against Trade Group. Instead of addressing those arguments, BTC contends that its declaratory judgment claim should not be dismissed because it comports with the Declaratory Judgment Act's "fundamental purpose" of resolving controversies "before they ripen into . . . some breach of contractual duty[.]" D.E. 19 at 12. (quotations and citations omitted). This argument is wholly devoid of logic. Trade Group sued BTC in Texas on May 10, 2023, for BTC's failure to pay the amounts owed to Trade Group under the Agreement. D.E. 18-2. Then BTC sued Trade Group in Florida on June 6, 2023, for breach of contract and a declaratory judgment that BTC has no obligation to pay the amounts owed to Trade Group under the Agreement. D.E. 1, Compl. ¶¶ 28–33, 46–48. Clearly, the controversy had ripened into a contractual breach before BTC sought judgment on it in Florida. BTC's declaratory judgment claim is undeniably improper and should therefore be dismissed. *See Pediatrix Med. Group of Florida, Inc. v. Aetna Inc.*, No. 18-60908-CIV, 2018 WL 4997092, at *6 (S.D. Fla. Aug. 27, 2018) (Cohn, J.).

## II. CONCLUSION

For the foregoing reasons, the Court should transfer this case to the Northern District of Texas or, in the alternative, dismiss BTC's Amended Complaint in its entirety.

Dated: August 30, 2023                  Respectfully submitted,

/s/*Alejandro J. Paz*
Jennifer C. Glasser
Florida Bar No.: 123145
Alejandro Paz
Florida Bar No.: 1011728
98 SE 7th Street
Miami, FL 33131-3522
Phone: (305) 374-5600
Fax: (305) 374-5095

**AKERMAN LLP**

Lindsey M. Brown (*pro hac* pending)
Texas Bar No. 24087977
lbrown@jw.com
Elizabeth Pittman (*pro hac* pending)
Texas Bar No. 24110823
epittman@jw.com
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Direct Phone (214) 953-6142
Direct Fax (214) 661-6899

**JACKSON WALKER LLP**

**ATTORNEYS FOR DEFENDANT
THE TRADE GROUP, INC.**

## **CERTIFICATE OF SERVICE**

      This is to certify that on August 30, 2023, a true and correct copy of the foregoing document was filed with the clerk of the court for the U.S. District Court, Southern District of Florida, using Court's ECF system on all counsel of record.

                                          */s/ Alejandro J. Paz*
                                            Alejandro J. Paz